# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# DIVISION

| | § | |
|---|---|---|
| **JUDY HEUGEL,** | § | |
| *Plaintiff* | § | |
| | § | **No.  1:22-cv-1152-LY** |
| **v.** | § | |
| | § | |
| **TRANS UNION, LLC, VICTORY** | § | |
| **MANAGEMENT SERVICES, LLC,** | § | |
| *Defendant* | § | |
| | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:    THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

Before the Court is Defendant Victory Management Services' ("Victory") 12(b)(3) Motion to Dismiss, Dkt. 18, and all related briefing.[1] After reviewing these filings and the relevant case law, the undersigned issues the following report and recommendation recommending that the District Court grant Victory's motion.

## I.    BACKGROUND

This case arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"). *See* Dkt. 1. Plaintiff Judy Heugel, a resident of Pflugerville in Travis

---

[1] Victory amended its Motion to Dismiss after the deadline set out by Federal Rule of Civil Procedure 15(a), without leave of Court and/or Heugel's written consent. As noted by Heugel in her response to the amended motion, the only difference between Victory's original Motion to Dismiss, Dkt. 18, and its Amended Motion to Dismiss, Dkt. 26, is a citation to and legal standard for 28 U.S.C. §1404(a). Dkt. 28, at 2. The arguments contained within the amended motion are the same as in the original motion. For the purposes of this Report and Recommendation, and given that Victory's original motion to dismiss, Dkt. 18, was referred to the undersigned, the undersigned will consider Dkt. 18 and its response.

1

County, Texas, claims Victory, a lender incorporated in Texas with its principal place of business in Lake Dallas in Denton County, Texas, repeatedly misreported the status of her account to Trans Union. *Id.* at 1-8.

Heugel claims that in early March 2022, while trying to eliminate her debts and improve her creditworthiness, she paid off a short-term loan she'd secured with Victory. *Id.* at 2. She alleges that as of March 19, 2022, her Trans Union credit report continued to show a balance of $392 on her Victory account. *Id.* at 3. This balance was significant in that it accounted for approximately 10% of her total debt. *Id.* Heugel then filed a dispute with Trans Union informing it that her Victory account was paid in full and that the account status should be "closed." *Id.* Heugel claims that Victory was notified that she filed a dispute and "failed to reasonably reinvestigate." *Id.* In reliance on misinformation from Victory, Trans Union declared that its review of her dispute was complete and the reported balance of $392 and "open" status of her Victory account were accurate. *Id.* at 4. After filing another dispute with Trans Union with the same result, Heugel reached out to Victory twice with no resolution. *Id.* at 4-5.

Over the next few months, Heugel filed several more disputes with Trans Union, bringing the total number of disputes filed to nine. *Id.* at 5. In July 2022, Heugel again reached out to Victory directly asking it to correctly report her paid-off balance to Trans Union. *Id.* at 6. Victory Vice President, R. Todd Lindsey allegedly wrote back blaming Trans Union and stating that "he had instructed his staff to refuse to respond any further to any communications from" Heugel. *Id.*

Heugel claims that she has suffered severe emotional distress, intermittent stomach aches and nausea, and disruption to her sleep schedule because of Victory's conduct. *Id.* at 7. She also claims that due to her Trans Union credit report and the misinformation contained therein, her application for a credit card was denied and she was offered a "gargantuan" interest rate of 23.3% on a personal loan she applied for. *Id.* at 7-8.

Heugel states that under the FCRA, Victory has an obligation to investigate after a consumer reporting agency, like Trans Union, notifies it that a customer disputes the accuracy of information it furnishes and to apprise consumer reporting agencies when it learns that information it has furnished is incorrect. *Id.* at 12. Based on its alleged failure to investigate the disputed information and notify Trans Union of the correct status of Heugel's account, Heugel argues that Victory violated the FCRA, that its violation was willful and negligent, and that Victory is liable for Heugel's actual, statutory, and punitive damages, attorney's fees, and costs. *Id.* at 13.

Victory moves to dismiss Heugel's claims arguing that other than the plaintiff, "none of the relevant witnesses, evidence, or facts have any meaningful ties to this venue." Dkt. 18, at 1. Rather, "virtually all of the evidence and witnesses with relevant information are located in and around Lewisville, Texas" in Denton County. *Id.* Victory further argues that the acts or omissions that give rise to Heugel's claim (namely, Victory's failure to investigate, review, report or furnish information) occurred in the Eastern District and that, as an alternative to dismissing the case for lack of venue, the case should be transferred to the Eastern District. *Id.* at 3.

3

Heugel responds that Victory forfeited its right to challenge venue because it previously filed a motion to dismiss without raising venue as a defense and the facts, as alleged, establish that venue is proper in this District. Dkt. 20, at 1.

## II.    LEGAL STANDARD

### A.    12(b)(3)

Federal Rule of Civil Procedure 12(b)(3) allows a party to move to dismiss an action for "improper venue." Fed. R. Civ. P. 12(b)(3). Once a defendant raises the issue of proper venue by motion, the burden of proof is placed upon the plaintiff to sustain venue. *Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.*, 982 F. Supp. 2d 714, 719 (W.D. Tex. 2013). "Plaintiff may carry this burden by establishing facts that, if taken to be true, establish proper venue." *Id.* (citations omitted). Where there is no evidentiary hearing, a plaintiff may carry her burden by presenting facts that, taken as true, would establish venue, and the court must resolve any factual conflicts in favor of the plaintiff. *Braspetro Oil Servs., Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007). In determining whether venue is proper, "the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Braspetro Oil Servs.*, 240 F. App'x at 615. However, courts may consider evidence in the record beyond the facts alleged in the complaint and its attachments, including affidavits or evidence submitted by the parties as part of the venue motion. *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 449 (5th Cir. 2008). When it is determined a case is filed in a division or district of

4

improper venue, the district court may either dismiss the case or transfer it to any district or division of proper venue. *See* 28 U.S.C. § 1406(a).

### III.    DISCUSSION

As a threshold issue, Heugel claims that Victory forfeited the right to seek dismissal for improper venue when it first moved for dismissal for failure to state a claim. Dkts. 20, at 2; 11. Under Federal Rule of Civil Procedure 12, "a party that makes a motion … must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). While it is true that Victory's 12(b)(6) motion did not raise improper venue as a defense, Victory subsequently moved to withdraw its 12(b)(6) motion. *See* Dkts. 11; 14. Victory's motion to withdraw its 12(b)(6) motion was granted by the District Court. *See* Dkt. 16.[2] Since the District Court granted Victory's motion to withdraw its 12(b)(6) motion, Victory's 12(b)(6) motion is no longer before the Court and Victory therefore has not forfeited its right to seek dismissal for improper venue.

Turning now to Victory's 12(b)(3) motion, the FCRA provides that "an action to enforce any liability created under this title … may be brought in any appropriate United States district court." 15 U.S.C. § 1681. Thus, venue for FCRA actions is established under the general venue rules found in 28 U.S.C. § 1391(b). *In re*

---

[2] As Heugel explains in her response, after Victory filed its 12(b)(6) motion her counsel contacted Victory's counsel to explain that Heugel's complaint met the 12(b)(6) pleading standards, Victory then agreed to withdraw its 12(b)(6) motion in exchange for Heugel's consent to an extension for Victory's answer. Dkt. 20, at 2. Victory requested an extension from the Court which was granted. Dkts. 13; 15. Victory then filed its answer and its 12(b)(3) motion. Dkt. 18, 19.

*Volkswagen of Am., Inc.,* 545 F.3d 304 (5th Cir. 2008) ("When no special, restrictive venue statute applies [as for FCRA actions], the general venue statute 28 U.S.C. § 1391, controls a plaintiff's choice of venue."). Under 28 U.S.C. § 1391(b) a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Victory argues that venue in this District is improper under § 1391(b)(2) because the alleged events and omissions that give rise to Heugel's complaint occurred in Denton County, Texas in the Eastern District. Dkt. 18, at 7-9. Victory points to its alleged failure to adequately investigate the disputes Heugel filed with Trans Union and its alleged failure to accurately report or furnish Heugel's account information to Trans Union. Dkt. 18, at 7. Victory argues that it would have been notified of Heugel's disputes, investigated the disputes, and furnished information concerning Heugel's account to Trans Union in and from its offices in Denton County, Texas in the Eastern District. *Id.*

Heugel, on the other hand, disagrees that only Victory's acts or omissions give rise to her claim. Dkt. 20, at 7. Instead, she points to both the harms she sustained because of Victory's conduct and the actions she took that led to her claims, namely, filing disputes with Trans Union. *Id.* She argues that the emotional distress, sleep

disruptions, nausea, and general frustration she suffered occurred where she lives in Travis County, Texas in the Western District. *Id.* at 7. Further, her actions such as reviewing her credit report, submitting a dispute to Trans Union, contacting Victory directly, and applying for a loan and credit card as detailed in her complaint occurred in Travis County, Texas as well. *Id.* at 8-9.

Courts differ on which actions or events give rise to a plaintiff's claims in an FCRA case. *See Smith v. Real Page, Inc.,* No. 4:18-CV-00025, 2018 WL 3105758, at *4 (E.D. Tex. June 25, 2018) (finding that in FCRA claim, substantial parts of the events that led to Plaintiff's claims, namely, Defendant's failure to reinvestigate and report Plaintiffs credit information, took place in Defendant's home district supporting the finding that venue was proper in that district); *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1076 (9th Cir. 2001) (holding venue is proper for FCRA actions where plaintiff suffers "at least one of the harms"). While Heugel's actions in reviewing her credit history, filing disputes, and contacting Victory form part of her claim, it is Victory's alleged failure to investigate her dispute and furnish accurate information to Trans Union that gives rise to her claims. *See* Dkt. 1, at 12 (stating that Victory had an obligation under the FCRA to investigate, report the results of the investigation, and notify consumer reporting agencies of deficient information and that Heugel's claims arise under the FCRA)

For the purposes of venue, Victory's alleged actions or omissions form a substantial part of the events that give rise to Heugel's claim. *See Sanders v. Polaris Indus., Inc.,* No. 1:20-CV-1257-LY, 2021 WL 7448731, at *4 (W.D. Tex. July 6, 2021);

*Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.*, 982 F. Supp. 2d 714, 722 (W.D. Tex. 2013) ("'Substantiality' for venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts."). Since Victory's actions or omissions occurred in the Eastern District of Texas and constitute substantial parts of the events that led to this suit, venue is not proper here.

As venue in this District is not proper, the undersigned must either recommend dismissal of the suit or transfer to a district where venue would be proper. 28 U.S.C. § 1406(a). Given that a substantial part of the events or omissions giving rise to Heugel's claims occurred in the Eastern District, and Victory resides in and is subject to the jurisdiction of the Eastern District as its principal place of business is in Denton County, Texas, venue is proper in the Eastern District of Texas. *See* Dkt. 18, at 5, 12; 28 U.S.C. § 1391(c); 28 U.S.C. § 1391(b)(1). Accordingly, the undersigned recommends that the case be dismissed without prejudice for improper venue or transferred to the Eastern District of Texas where a substantial part of the events or omissions giving rise to the claim occurred and where Victory resides.

## IV.    RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that Victory's 12(b)(3) Motion to Dismiss for Improper Venue, Dkt. 18, be **GRANTED** and the case be **DISMISSED WITHOUT PREJUDICE** or **TRANSFERRED TO THE EASTERN DISTRICT OF TEXAS.**

**IT IS ORDERED** that the referral of this case to the Magistrate Court is **CANCELED.**

## V.     WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The district court need not consider frivolous, conclusive, or general objections.  *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).  A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from *de novo* review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court.   *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED April 10, 2023.

_____
DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE